1

2

3

4

5

6

7 **UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA**

8 LUIS GALEGO,                                       )       3:10-cv-00468-LRH (WGC)
                                                     )
9         Plaintiff,                                 )       **REPORT AND RECOMMENDATION**
                                                     )       **OF U.S. MAGISTRATE JUDGE**
10        vs.                                        )
                                                     )
11 BRUCE BANNISTER, et al.,                          )
                                                     )
12        Defendants.                                )
   _____                  )

13        This Report and Recommendation is made to the Honorable Larry R. Hicks, United

14 States District Judge. The action was referred to the undersigned Magistrate Judge pursuant

15 to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4. Before the court is

16 Defendants renewed Motion for Summary Judgment. (Doc. # 35.)[1] After a thorough review,

17 the court recommends that Defendants' motion be granted.

18                          **I.  BACKGROUND**

19        At all relevant times, Plaintiff Luis Galego (Plaintiff) was an inmate in custody of the

20 Nevada Department of Corrections (NDOC). (Pl.'s Compl. (Doc. #11) at 1.) The events

21 giving rise to this action took place at Lovelock Correctional Center (LCC), although

22 Plaintiff currently resides at Ely State Prison (ESP). (*Id.*, Doc. # 59.) Plaintiff, a *pro se*

23 litigant, brings this action pursuant to 42 U.S.C. § 1983. (Doc. # 11.) Defendants are Dr.

24 John Scott and Nursing Director Don Poag. (*See* Screening Order (Doc. # 10) at 3-4.)

25        On screening, the court determined that Plaintiff sets forth a colorable Eighth

26 Amendment claim for deliberate indifference to a serious medical need. (Doc. # 10.)

27

28        [1]Refers to court's docket number.

Specifically, Plaintiff alleges that he suffers from severe chest pain, pain in his left lung, shortness of breath, high blood pressure, and has a family history of heart problems. (Doc. # 11 at 3-4, 6-8.) He claims that Dr. Scott examined him, and after a quick, but limited symptom check, concluded Plaintiff has no heart problems. (*Id.* at 4, 6.) He also alleges that Don Poag responded to his medical kite by stating that Plaintiff refused Dr. Scott's recommendations, which Plaintiff claims is untrue. (*Id.* at 4.)

On June 2, 2011, Defendants filed a Motion for Summary Judgment, arguing: (1) they were not deliberately indifferent to Plaintiff's serious medical needs; (2) Defendants cannot be sued in their official capacity; and (3) they are entitled to qualified immunity. (Doc. # 35 at 5-11.)

On December 20, 2011, the court issued a Report and Recommendation that Defendants' motion be granted in part and denied in part. (Doc. # 61.) The court recommended that Defendants' motion be granted insofar as Plaintiff asserts official capacity damages claims against them. (Doc. # 61 at 6-7.) The court found, however, that Defendants were not entitled to summary judgment on the Eighth Amendment claim because they failed to authenticate any of the exhibits filed in support of their motion. (*See id.* at 6.) The court also found that Defendants were not entitled to qualified immunity. (*See id.* at 7-8.)

On January 12, 2012, Defendants filed an objection to the Report and Recommendation. (Doc. # 64.) Defendants conceded the propriety of the court's recommendation that the motion be denied as a result of Defendants' failure to authenticate the evidence filed in support of their motion, but submitted declarations authenticating the evidence, and asked that the district court review the motion with this new evidence in mind. (Doc. # 64.) Specifically, Defendants submitted declarations authenticating the evidence filed in support of their motion, including: (1) Plaintiff's medical records (Exhibit A); (2) Plaintiff's Offender Movement History Report (Exhibit C); and Plaintiff's Inmate

1    Issue History (Exhibit D).[2]  (*See* Doc. # 64 at 11-15.)

2              On February 17, 2012, the Honorable Larry R.  Hicks, United States District Judge,

3    conducted a de novo review, declined to consider the new evidence submitted by

4    Defendants, and entered an order adopting the Report and Recommendation.  (Doc. # 66.)

5              On March 22, 2012, the court held a status conference in this action, and determined

6    that reconsideration of Defendants' Motion for Summary Judgment (Doc. # 35) in

7    connection with the declarations provided in connection with their objection to

8    authenticate the evidence supporting the motion, is appropriate.  (*See* Docs. # 78, # 79.)

9    The court further determined that the parties need not submit further briefing, as the

10   motion had been fully briefed, and Plaintiff had an opportunity to review and respond to

11   the evidence (*see* Doc. # 47, construed as Plaintiff's opposition), without the accompanying

12   authenticating declarations.  (*Id.*)

13                                   **II. LEGAL STANDARD**

14             "The purpose of summary judgment is to avoid unnecessary trials when there is no

15   dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*,

16   18 F.3d 1468, 1471 (9th Cir.  1994) (citation omitted). All reasonable inferences are drawn in

17   favor of the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir.  2008) (citing

18   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).  Summary judgment is

19   appropriate if "the pleadings, the discovery and disclosure materials on file, and any

20   affidavits show that there is no genuine issue as to any material fact and that the movant is

21   entitled to judgment as a matter of law." *Id*. (quoting Fed.R.Civ.P. 56(c)). Where reasonable

22   minds could differ on the material facts at issue, however, summary judgment is not

23   appropriate.  *See Anderson*, 477 U.S. at 250.

24             The moving party bears the burden of informing the court of the basis for its motion,

25   together with evidence demonstrating the absence of any genuine issue of material fact.

26   *Celotex Corp.  v.  Catrett*, 477 U.S. 317, 323 (1986). Although the parties may submit

27

28             [2] Defendants subsequently withdrew Exhibit B.  (*See* Doc. # 65.)

evidence in an inadmissible form, only evidence which might be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment.  Fed.R.Civ.P. 56(c).

In evaluating the appropriateness of summary judgment, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) considering that evidence in light of the appropriate standard of proof. *See Anderson*, 477 U.S. at 248-250. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id.*  at 248.

In determining summary judgment, a court applies a burden shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'[ ] In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp.  Brokerage Co.  v.  Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir.  2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 323-25. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v.  S.H. Kress & Co.*, 398 U.S. 144, 160 (1970).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec.  Indus.  Co.  v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual

4

1 dispute, the opposing party need not establish a material issue of fact conclusively in its

2 favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to

3 resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac.*

4 *Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)(quotation marks and citation

5 omitted). The nonmoving party cannot avoid summary judgment by relying solely on

6 conclusory allegations that are unsupported by factual data. *Id*. Instead, the opposition

7 must go beyond the assertions and allegations of the pleadings and set forth specific facts by

8 producing competent evidence that shows a genuine issue for trial. *See* Fed.R.Civ.P. 56(e);

9 *Celotex*, 477 U.S. at 324.

10      At summary judgment, a court's function is not to weigh the evidence and determine

11 the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S.

12 at 249.  While the evidence of the nonmovant is "to be believed, and all justifiable

13 inferences are to be drawn in its favor," if the evidence of the nonmoving party is merely

14 colorable or is not significantly probative, summary judgment may be granted. *Id*. at 249-

15 50, 255 (citations omitted).

16 **III. DISCUSSION**

17 **A.  EIGHTH AMENDMENT DELIBERATE INDIFFERENCE TO A SERIOUS**

18 **MEDICAL NEED**

19      A prisoner can establish an Eighth Amendment violation arising from deficient

20 medical care if he can prove that prison officials were deliberately indifferent to a serious

21 medical need. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  "The requirement of deliberate

22 indifference is less stringent in cases involving a prisoner's medical needs than in other

23 cases involving harm to incarcerated individuals because '[t]he State's responsibility to

24 provide inmates with medical care ordinarily does not conflict with competing

25 administrative concerns.'" *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992), *rev'd*

26 *on other grounds, WMX Tech., Inc. v. Miller*, 104 F.3d. 1133 (9th Cir. 1997).  "In deciding

27 whether there has been deliberate indifference to an inmate's serious medical needs, [the

28

court] need not defer to the judgment of prison doctors or administrators." *Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989).

A finding of deliberate indifference involves the examination of two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's responses to that need." *McGuckin v. Smith*, 974 F.2d at 1059. "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *Id.* (citing *Estelle*, 429 U.S. at 104). Examples of conditions that are "serious" in nature include "an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Id.* at 1059-60; *see also Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (quoting *McGuckin* and finding that inmate whose jaw was broken and mouth was wired shut for several months demonstrated a serious medical need).

If the medical needs are serious, Plaintiff must show that Defendants acted with deliberate indifference to those needs. *Estelle*, 429 U.S. at 104. "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). Deliberate indifference entails something more than medical malpractice or even gross negligence. *Id.* Inadvertence, by itself, is insufficient to establish a cause of action under § 1983. *McGuckin*, 974 F.2d at 1060. Instead, deliberate indifference is only present when a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002) (quoting *Farmer*, 511 U.S. at 858). "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment" or the express orders of a prisoner's prior physician for reasons unrelated to the medical needs of the prisoner. *Hunt v. Dental Dep't.*, 865 F.2d 198, 201 (9th Cir. 1989) (internal

quotation marks and citation omitted). Where delay in receiving medical treatment is alleged, a prisoner must demonstrate that the delay led to further injury. *McGuckin*, 974 F.2d at 1060.

In addition, a prison physician is not deliberately indifferent to an inmate's serious medical need when the physician prescribes a different method of treatment than that requested by the inmate. *See McGuckin*, 974 F.2d at 1059 (explaining that negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights); *see also Snow v. McDaniel*, 681 F.3d 978, 987 (citing *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989)); *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981) (difference of opinion between a prisoner-patient and medical staff regarding treatment is not cognizable under § 1983). To establish that a difference of opinion amounted to deliberate indifference, the inmate "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances" and that the course of treatment was chosen "in conscious disregard of an excessive risk to [the prisoner's] health." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) (citations omitted); *see also Snow*, 681 F.3d at 988 (quoting *Jackson*, 90 F.3d at 332) (finding that "a reasonable jury could conclude that the decision of the non-treating, non-specialist physicians to repeatedly deny the recommendations for surgery was medically unacceptable under the circumstances").

**B. SUMMARY OF RELEVANT EVIDENCE**

At all relevant times, defendant Scott was the Senior Physician at LCC, and defendant Poag was the Director of Nursing Services. (Doc. # 35 at 3 ¶¶ 3-4.)

On June 30, 2009, Plaintiff requested an appointment with defendant Scott for complaints of chest pain and trouble breathing. (Doc. # 36-7 at 12.)

On July 15, 2009, Plaintiff requested an appointment with defendant Scott concerning chest pain and trouble breathing. (Doc. # 36-7 at 6.) He was scheduled for an appointment on July 22, 2009. (*Id.*)

Plaintiff was seen by defendant Scott for complaints of chest pain on July 23, 2009. (Doc. # 36-8 at 13.) Defendant Scott performed a physical examination as well as an EKG and noted that Plaintiff's breath sounded clear. (*Id.* at 12-13.) Defendant Scott assessed Plaintiff as having had a panic attack and recommended that he see a psychiatrist. (*Id.*) Plaintiff refused defendant Scott's recommendation. (*Id.*)

On August 10, 2009, Plaintiff sent a kite to defendant Scott asking for a refill of his medication for his chest pain. (Doc. # 36-7 at 1.) On October 21, 2009, Plaintiff sent a medical kite to defendant Poag asking for a practitioner to look into his complaints of chest pain. (Doc. # 36-6 at 3.) He was told he would be scheduled for the next clinic. (*Id.*)

On February 14, 2010, Plaintiff sent a medical kite to defendant Poag asking when he would be seen by a specialist for his chest pain. (Doc. # 36-5 at 1.) He was told he would see a specialist the next time there was a visiting provider clinic at LCC. (*Id.*)

On February 21, 2010, Plaintiff called a "man down" to be taken to the infirmary and was seen by medical staff for complaints of chest pain and dizziness. (Doc. # 36-2 at 3.) Plaintiff's vitals were checked and his lab work was ordered. (*Id.*, Doc. # 36-8 at 11.) Plaintiff was given medication and it was noted that his pain had decreased but was still present. (*Id.*) Plaintiff was admitted to the infirmary for observation. (*Id.*) Later that day, Plaintiff denied any chest pain, and reported feeling better. (Doc. # 36-8 at 11.) His heart rate was regular and he was taking meals and fluids well. (*Id.*) He continued to be monitored while medical staff awaited his lab results. (*Id.*) Even later in the day, Plaintiff denied chest pain again. (*Id.*) He continued to be observed and was instructed to see defendant Scott the following day. (*Id.*)

The next day, February 22, 2010, Plaintiff was examined by defendant Scott, who ordered that he could be discharged from the infirmary. (Doc. # 36-8 at 10.) Plaintiff then acted agitated toward nursing staff and asserted that he was being denied proper care. (Doc. # 36-8 at 10.) As a result, Plaintiff was kept in the infirmary and was instructed to follow up with defendant Scott the next day. (*Id.*)

On February 24, 2010, Plaintiff was seen by defendant Scott. (Doc. # 36-8 at 10.) Plaintiff's EKG and lab results were normal. (*Id.*) Defendant Scott diagnosed Plaintiff as having atypical chest pain caused by anxiety disorder, and cleared him to be released from the infirmary when bed space was available. (*Id.*)

On March 1, 2010, Plaintiff sent a medical kite to defendant Scott asking for an appointment to check out his chest pain. (Doc. # 36-4 at 3.) He also sent a kite to defendant Poag stating that he had serious chest pain and did not feel well. (Doc. # 36-4 at 14.) Nurse Hegge responded asking whether Plaintiff was requesting an appointment. (*Id.*)

Plaintiff was seen on March 4, 2010 by Dr. Mar, who diagnosed him with atypical chest pain due to anxiety. (Doc. # 36-8 at 8-9.) Like defendant Scott, Dr. Mar recommended that Plaintiff see a psychiatrist for his anxiety. (*Id.*)

On April 6, 2010, Plaintiff called another "man down," complaining of chest pain and dizziness. (Doc. # 36-2 at .) He was transported to medical, but was noted as appearing calm. (*Id.*) He was referred to defendant Scott to perform an EKG and other lab tests. (*Id.*) He was admitted to the infirmary. (*Id.*) Plaintiff was seen by nursing staff in the infirmary, who noted that he was resting comfortably and that his vital signs were normal. (Doc. # 36-8 at 7.) Defendant Scott subsequently ordered him released from the infirmary. (*Id.*)

On April 20, 2010, a "man down" was called for Plaintiff after he was talking to an officer and became angry about a bed move. (Doc. # 36-2 at 1.) He was to be admitted to the infirmary and referred to a doctor. (*Id.*) Plaintiff was examined by defendant Scott at the clinic, who found that his vital signs were normal. (Doc. # 36-8 at 8.) Defendant Scott noted that Plaintiff appeared to be conscious but refused to respond verbally. (*Id.*) Defendant Scott diagnosed Plaintiff with atypical chest pain, and he was transferred to the infirmary. (*Id.*) Plaintiff remained in the infirmary until May 21, 2010. (*Id.* at 5-8.) During this time he received care and monitoring for his chest condition. (*Id.*)

///

///

9

**C. ANALYSIS**

Assuming without deciding that Plaintiff suffers from a serious medical need, the court finds that there is no evidence of deliberate indifference on the part of Defendants. When Plaintiff complained of or manifested problems related to chest pain or shortness of breath, he was seen and given prompt medical attention. Tests were ordered, he was monitored, and he was given medication where indicated. It was defendant Scott's opinion that Plaintiff's chest pain was caused by anxiety, and Plaintiff refused his recommendations to see a psychiatrist. Plaintiff's opinion that his chest pain was caused by something else is not sufficient to raise a genuine issue of material fact. A difference of opinion regarding a course of treatment can only amount to deliberate indifference if it is established that the chosen course of treatment was medically unacceptable under the circumstances, and that evidence has not been presented to the court. Accordingly, summary judgment should be entered in favor of Defendants.

///
///
///
///
///
///
///
///
///
///
///
///
///
///

## IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an Order granting Defendants' renewed Motion for Summary Judgment (Doc. # 35).

The parties should be aware of the following:

1.      That they may file, pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within fourteen (14) days of receipt.  These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.      That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1), Fed. R. App. P., should not be filed until entry of the District Court's judgment.

DATED: July 16, 2012.

WILLIAM G.  COBB
UNITED STATES MAGISTRATE JUDGE

11